1

2      *POSTED ON WEBSITE*

3      *NOT FOR PUBLICATION*

4

5      **UNITED STATES BANKRUPTCY COURT**

6      **EASTERN DISTRICT OF CALIFORNIA**

7

| 8 | In re | ) | Case No. 15-90811-E-7 |
|---|---|---|---|
| 9 | GOLD STRIKE HEIGHTS | ) | |
| | HOMEOWNERS ASSOCIATION, | ) | |
| 10 | | ) | |
| | Debtor. | ) | |
| 11 | ———————————————————— | ) | |
| 12 | INDIAN VILLAGE ESTATES, LLC, a | ) | Adv. Proc. No. 15-9061 |
| | California limited liability company, | ) | |
| 13 | | ) | |
| | Plaintiff, | ) | |
| 14 | | ) | |
| | v. | ) | |
| 15 | | ) | |
| | GOLD STRIKE HEIGHTS | ) | |
| 16 | ASSOCIATION, a California corporation; | ) | |
| | GOLD STRIKE HEIGHTS | ) | |
| 17 | HOMEOWNERS ASSOCIATION, a | ) | |
| | California corporation; COMMUNITY | ) | |
| 18 | ASSESSMENT RECOVERY SERVICES, | ) | |
| | business form unknown; and DOES 1 | ) | |
| 19 | through 50, inclusive, | ) | |
| | | ) | |
| 20 | Defendants. | ) | |
| 21 | ———————————————————— | ) | |

21     **This Memorandum Decision is not appropriate for publication.**

22     **It may be cited for persuasive value on the matters addressed.**

23

24     **MEMORANDUM OPINION AND DECISION**

       **Motion For Summary Judgment By Community Assessment Recovery Services**

25         Plaintiff Indian Village Estates, LLC ("Plaintiff") filed a complaint in the California Superior

26     Court against Defendants Gold Strike Heights Association ("GSH Assn"), Gold Strike Heights

27     Homeowners Association ("GSH Homeowners Assn"), and Community Assessment Recovery

28     Services ("CARS") on March 20, 2015, which was removed to this court on November 11, 2015.

1    Dckt. 1.  On November 3, 2016, Defendant CARS filed the instant Motion for Summary Judgment,

2    Dckt. 68, with the actual grounds upon which the requested relief is based (Fed. R. Civ. P. 7(b) and

3    Fed. R. Bankr. P. 7007) stated in the first portion of CARS' Points and Authorities in support of the

4    Motion, Dckt. 69.

5         The court grants the Motion as to the First Cause of Action and denies, without prejudice to

6    determination of the asserted defenses and opposition at trial,  all other Causes of Action.  The court

7    determines the specified facts and issues that are not in genuine material dispute as expressly set

8    forth herein and restated in the separate order of the court on this Motion.

9                              **REVIEW OF COMPLAINT**

10        Before diving into the Motion and substantial legal and evidentiary pleadings, and the

11   Opposition and opposition legal and evidentiary pleadings, the court begins with the Complaint itself

12   and what claims Plaintiff states against CARS.  The Complaint, Dckt. 5, states the following Causes

13   of Action against the specified Defendants:

14        A.    First Cause of Action—Plaintiff requests declaratory relief between itself and GSH
               Homeowners Assn, CARS for the court to state the existing relationship between
15             GSH Assn, as a suspended entity, and GSH Homeowners, Assn created by the
               majority of the GSH Assn board members when they discovered that GSH Assn had
16             been suspended by the California Secretary of State, in connection with the asserted
               foreclosure sale of 31 lots.
17
          B.    Second Cause of Action—Plaintiff seeks to set aside the 31 trustee's sales conducted
18             by CARS, asserting that GSH Assn, GSH Homeowners Assn, and CARS did not
               have the legal authority to conduct the trustee's sales.  This cause of action seeks a
19             determination that the trustee deeds issued by CARS are void, as opposed to
               voidable, and did not transfer title from Plaintiff.
20
          C.    Third Cause of Action—Plaintiff requests that the court "cancel" the 31 trustee deeds
21             issued by CARS because such deeds are void.  This appears to restate the Second
               Cause of Action, modifying the relief slightly.  This action appears to include CARS,
22             as it is CARS' deeds that are sought to be determined void, but Plaintiff does not
               clearly state against whom such relief is requested.
23
          D.    Fourth Cause of Action Wrongful Foreclosure—Plaintiff seeks relief against GSH
24             Homeowners Assn and CARS for conducting a foreclosure sale when it is alleged
               that no such authority existed.  This is not based on CARS mailing of notices or
25             performance of duties.  It is asserted that GSH Assn could not conduct such a sale
               because CARS was given notice that the corporate powers of GSH Assn were
26             suspended.  CARS then proceeded to act in the name of and for a suspended
               corporation.  Then, after the sale was completed, executed deeds that stated the
27             purchaser to be GSH Homeowners Assn, someone other than the purchaser identified
               at the time of the trustee's sales conducted by CARS.
28

                                          2

E.   Fifth Cause of Action to Quiet Title—This cause of action includes CARS, asserting that the trustee's sales were improperly conducted because GSH Assn's powers were suspended and no sale could be conducted.  However, it is not alleged that CARS asserted, or now asserts, any interest in the 31 lots, but that such title needs to be quieted only as between Plaintiff and GSH Homeowners Assn (the Chapter 7 Debtor) and the successor Chapter 7 Trustee.

F.   Sixth Cause of Action for Slander of Title—This cause of action asserts that GSH Homeowners Assn and CARS acted with malice, fraud and/or oppression, in noticing the defaults, noticing the trustee's sales, conducting the trustee's sales, and then recording the trustee deeds, resulting in Plaintiff's title to the twenty-one lots being slandered.  Plaintiff does not assert that such occurred in error or by mere negligence, but that such conduct was done with the knowledge that the person for whom the sales were being purportedly conducted, GSH Assn, could not act to have such sales conducted.

## REVIEW OF GROUNDS STATED IN MOTION, POINTS AND AUTHORITIES, OPPOSITION, AND EVIDENCE

The court may grant summary judgment or determine the facts that are not in material dispute as provided in Federal Rule of Civil Procedure 56(a) and (g), and Federal Rule of Bankruptcy Procedure 7056.  From the court's review of the Points and Authorities, pages one through three, the grounds stated by Movant are:

A.   CARS acted as the trustee for the foreclosure of 31 lots located in Calaveras County, California.

B.   California Civil Code § 2924(b) "completely immunizes CARS from liability in the context of its actions as a foreclosure trustee for 'any good faith error resulting from reliance on information provided in good faith by the beneficiary.'"

C.   Plaintiff has judicially admitted CARS' purported wrongful actions took place while it was acting in its capacity as foreclosure trustee.

D.   Plaintiff alleges CARS sent out improper notices during the foreclosure process by using the name of what Plaintiff  characterizes as the "wrong" entity - GSH Assn.  Plaintiff asserts that the notices should have been given in the name of, and on behalf of, GSH Homeowners Association.  Plaintiff asserts the entity on whose behalf CARS ostensibly undertook to foreclose, GSH Assn, no longer possessed the capacity to foreclose, its corporate powers having been suspended.

E.   CARS asserts that GSH Assn had been merged into GSH Homeowners Assn, and that GSH Homeowners Assn could act (presumably having CARS use the name of GSH Assn to conduct nonjudicial foreclosure sales for, and by, GSH Homeowners Assn).

F.   Title to the 31 lots at issue was taken in the name of GSH Homeowners Assn.

G.   Plaintiff was not misled by the use of the GSH Assn in the nonjudicial foreclosure notices and the nonjudicial sales conducted, and then GSH Homeowners Assn's name on the trustee's deeds issued from the nonjudicial foreclosure sales conducted

3

in the name of GSH Assn.

H.     California Civil Code § 2924(d) provides an absolute privilege for all communications and related conduct of a trustee, even if "wrongful."

I.     The First Cause of Action for Summary Judgment fails to state a claim for declaratory relief—that a current controversy exists. The Complaint seeks to state claims for a completed foreclosure and to correct past wrongs.

J.     Summary Judgment on the Second Cause of Action (to set aside the trustee's sales), Third Cause of Action (to cancel the trustee's sales), and the Fourth Cause of Action (wrongful foreclosure) are subject to summary judgment because Plaintiff failed to make the required pre-suit tender of the indebtedness upon which the trustee's sales were based (citing *Loan v. Citibank*, 202 Cal. App.4th 89, 104 (2011)).

K.     The Complaint is defective as an action to quiet title because it is not verified (citing Cal. C.C.P. § 761.020).

L.     For the Slander of Title Cause of Action, Plaintiff must plead and prove that Defendant CARS' publication was not privileged or justified (citing *La Jolla Group, et al v. Bruce*, 211 Cal. App. 4th 461, 472 (2012)).

**Evidence in Support of Motion for Summary Judgment**

The evidence in support of the Motion begins with the testimony of Rebecca Jolly. Declaration, Dckt. 72.

Ms. Jolly's testimony is summarized as follows:

A.     She is an employee of CARS. *Id.* ¶ 1.

B.     During her employment at CARS, including the 31 sales at issue in the Complaint, Ms. Jolly has administered approximately 50 nonjudicial foreclosure sales for various homeowner associations. *Id.*, ¶ 3.

C.     CARS and GSH Homeowners Assn entered into an agreement on July 24, 2012, for CARS to conduct the 31 foreclosure sales at issue in the Complaint. *Id.*, ¶ 4.

D.     CARS prepared and provided all of the documents, including notices, for the foreclosure sales to be conducted. ¶¶ 5, 6.

Ms. Jolly directs the court to Exhibit 7, which she testifies is the contract between CARS and GSH Homeowners Assn. *Id.* ¶ 7. That contract is between GSH Homeowners Assn and CARS for the purpose of collecting delinquent homeowner assessments. No reference is made in the contract to GSH Assn.

E.     Ms. Jolly and CARS relied on information provided to it by Michael Cooper, identified as the president of GSH Homeowners Assn. CARS performed no independent investigation, relying solely on the information provided by Mr. Cooper. *Id.*, ¶ 8.

F.     Ms. Jolly, upon review of the documents provided by Mr. Cooper, determined that the "foreclosing party" was GSH Assn. *Id.*, ¶ 9.

1   Ms. Jolly does not provide testimony how GSH Assn was the proper foreclosing party, but that CARS' contract was with GSH Homeowners Assn.

2

3       G.   CARS proceeded with conducting the nonjudicial foreclosure sales through GSH Assn (not GSH Homeowners Assn). Documents were sent to Mr. Cooper showing that CARS was proceeding with the sales using the name GSH Assn, not GSH Homeowners Assn, and no objection or corrections were received from Mr. Cooper. *Id.*, ¶ 10.

4

5

6       H.   Ms. Jolly wrote to Mark Weiner in October 2012, stating to him that the properties which were the subject of the nonjudicial foreclosure sales "reside in [GSH Assn]." *Id.* ¶ 13.

7

8       I.   When Ms. Jolly received an inquiry from Mark Weiner in March 2013 as to why CARS was attempting to collect monies purported to be owed to GSH Homeowners Assn using the name GSH Assn, she did not respond to Mr. Weiner, but referred the matter to Mark Weiner. *Id.* ¶ 14. Ms. Jolly testifies that Mr. Weiner advised her that, based on GSH Homeowners Assn's attorney, GSH Assn and GSH Homeowners Assn were the same entity. *Id.* Ms. Jolly testifies that she then relied upon the statements from Mr. Weiner repeating the statements from the unidentified attorney.

9

10

11

12      J.   Prior to the foreclosures, Ms. Jolly testifies that she had no dealings with Plaintiff, Mark Weiner, Don Lee, or anyone associated with Plaintiff. Further, that she possessed no ill-will or malice to any of them. *Id.* ¶ 17.

13

14      Mark Ellis, counsel for CARS, provides his declaration in support of the Motion for

15  Summary Judgment. Dckt. 71. In it he authenticates exhibits which are either pleadings filed in this

16  Adversary Proceeding or provided in discovery, which consist of: (1) March 2013 letter from Mark

17  Weiner to Becky Jolly; (2) GSH Homeowners Assn minutes; (3) October 9, 2012 letter from

18  Rebecca Jolly to Mark Weiner; and (4) October 22, 2014 letter from Mr. Cooper to Don Lee.

19      In looking at CARS' Exhibit 16, the October 22, 2014 letter from Mike Cooper, president

20  of GSH Homeowners Assn, to Don Lee, the highlighted portion states that Mr. Cooper was advised

21  by GSH Homeowners Assn and CARS that GSH Assn and GSH Homeowners Assn are the same

22  entity. This Exhibit conflicts with Ms. Jolly's testimony that it was Mr. Cooper who advised her of

23  that legal conclusion.

### OPPOSITION STATED BY PLAINTIFF

25      The court has reviewed the Opposition stated by Plaintiff to the above grounds. Dckt. 78.

26  The court summarizes the opposition to those grounds as follows:

27      A.   On November 9, 2004, GSH Assn's powers, rights, and privileges were suspended by the California Secretary of State.

28

B.    GSH Homeowners Assn was formed in 2007, which was to replace GSH Assn and enforce the Covenants, Conditions, and Restrictions in the place of GSH Assn.

C.    GSH Homeowners Assn was intended as a new entity, not merely a continuation of GSH Assn.

D.    GSH Assn entered into an agreement for CARS to process the foreclosures on lots.

E.    When CARS issued the Notice of Delinquent Assessments for the 31 lots at issue, it was done as the trustee for "GSH Assn."

F.    On March 13, 2013, CARS was notified by Mark Weiner, on behalf of Plaintiff that CARS was conducting the trustee's sales for the "wrong entity," whose corporate powers had been suspended.

G.    On September 30, 2014, CARS conducted the foreclosure sales on the 31 lots as the purported Trustee for GSH Assn (the suspended corporation).

H.    CARS recorded Certificates of Foreclosure Sale Subject to Redemption identifying GSH Assn as the owner of the 31 lots.

I.    On January 15, 2015, CARS recorded deeds for each of the 31 lots that identified GSH Homeowners Assn as the purchaser at the September 30, 2014 foreclosure sale.

J.    CARS had actual knowledge that GSH Assn is a separate entity from GSH Homeowners Assn.

K.    The purported foreclosures by GSH Assn are void. CARS was not the agent of, and could not conduct foreclosure sales for, GSH Assn, a suspended corporation.

L.    CARS prepared the foreclosure deeds knowingly misstating the person who was the purported purchaser at the actual foreclosure sale.

M.    The alleged immunities do not apply because CARS had actual knowledge that GSH Assn was a suspended corporation and that it could not act for GSH Assn.

N.    There is no tender requirement when challenging a void foreclosure sale (citing *Yvanova v. New Century Mortgage Corp.*, 62 Cal.4th 930, FN.4 (2016); *Dimock v. Emerald Properties, LLC*, 81 Cal. App.4th 868, 878 (2000)).

O.    GSH Assn and GSH Homeowners Assn were not merged, as alleged by CARS. Declarations of Mark Weiner and Don Lee.

**Evidence Presented by Plaintiff**

In opposition, Plaintiff provides the declarations of Mark Weiner and Don Lee. In his declaration, Mark Weiner testified:

A.    Mr. Weiner originally owned the 31 lots which are at issue in this Adversary Proceeding. Declaration, ¶ 2; Dckt. 79.

B.    Mr. Weiner was appointed to the three-member board of GSH Assn. *Id.* ¶ 5.

6

C.    Mr. Weiner then chose Don Lee to be appointed as a member of the GSH Assn board so that Mr. Weiner could control the GSH Assn.  *Id.* ¶ 6.

D.    Mr. Weiner testifies that in February 2007 Don Lee advised him that GSH Assn had its corporate powers suspended by the Secretary of State and had not paid taxes for several years.  *Id.* ¶ 9.  Mr. Weiner does not testify of whether he verified this information.

E.    In March 2007, Mr. Weiner testifies that he directed Don Lee (who is not an attorney) to form a new home owners association (rather than address the tax issues relating to the GSH Assn) so that Mr. Weiner could move forward with his plans to develop some of the 31 lots.  *Id.* ¶ 12.

F.    By May 2007, Don Lee (who is not an attorney) formed GSH Homeowners Assn so that Mr. Weiner could proceed with his plans to develop 30 of the 31 lots.  *Id.* ¶ 13.

G.    In 2008, Don Lee (who is not an attorney) prepared the Amendment to Declaration of Restrictions Gold Strike Heights Homeowners Association.  *Id.* ¶ 21. Notwithstanding the language in the Amendment, Mr. Weiner testifies that it was not his "intention" to have GSH Homeowners Assn to be the successor in interest to GSH Assn, but "only transfer the rights to enforce the CC&Rs."  *Id.*

H.    In March 2013, Mr. Weiner received, on behalf of Plaintiff, the notices of delinquent assessments for the 31 lots at issue in this Adversary Proceeding. The notices stated that the delinquent assessments were owed to GSH Assn.  *Id.* ¶ 23.

I.    In October 2013, Mr. Weiner received, on behalf of Plaintiff, 31 notices of default and a nonjudicial foreclosure sale for the 31 lots at issue in this Adversary Proceeding.  *Id.* ¶ 24.

J.    In September 2014, Mr. Weiner received, on behalf of Plaintiff, 31 notices setting nonjudicial foreclosure sale dates for the 31 lots that are the subject of this Adversary Proceeding.  *Id.* ¶ 25.

K.    Mr. Weiner attended the September 30, 2014 nonjudicial foreclosure sales for the 31 lots and testifies that it was announced GSH Assn was the credit bidder at the sale.  There were no other bidders for any of the 31 lots.  *Id.* ¶ 26.

L.    Mr. Weiner testifies that on October 15, 2015, he received 31 notices stating that GSH Assn had purchased all of the 31 lots at the September 30, 2014 nonjudicial foreclosure sales.  *Id.* ¶ 27.

M.    Mr. Weiner testifies that he notified CARS that the attempted nonjudicial foreclosure sales being advanced by CARS were being conducted for an entity for whom the corporate powers had been suspended.  *Id.* ¶ 28.

N.    He further testifies that there were no assets transferred from GSH Assn to GSH Homeowners Assn.  *Id.* ¶¶ 29, 30.

O.    He testifies that there was never any approval by GSH Assn to be merged into GSH Homeowners Assn.  *Id.* ¶¶ 31, 32.  Further, the board of GSH Assn never authorized any nonjudicial foreclosure sales to be conducted by CARS.  *Id.* ¶ 33.

The Declaration of Don Lee is filed in opposition to the Motion for Summary Judgment, in

which Mr. Lee testifies:

A.  Mr. Lee served as a board member of the GSH Assn at the request of Mark Weiner. Declaration, ¶ 3, 4; Dckt. 80.

B.  He testifies that he discovered in February 2007 that GSH Assn had not filed the required statement of information and had not paid its taxes, resulting in it being suspended by the Secretary of State.  *Id.* ¶ 6.

C.  Mark Weiner asked Don Lee (who is not an attorney) to form a new homeowners association so that Mark Weiner could proceed with his plans to develop 30 of the 31 lots.  *Id.* ¶ 7.

D.  In May of 2007 Don Lee (who is not an attorney) formed GSH Homeowners Assn so that Mark Weiner could proceed to develop the 30 lots.  *Id.* ¶ 8.

E.  Don Lee served on the board of GSH Homeowners Assn from May 2007 until July 2010.  *Id.* ¶ 9.

F.  Don Lee testifies that he is currently the president of GSH Assn.  *Id.* ¶ 10.

G.  Don Lee testifies that in February and September 2014 he sent letters to Mike Cooper and Becky Jolly informing them that the delinquencies and foreclosures purported to be noticed by GSH Assn were for a suspended corporation.  *Id.* ¶ 12.

H.  Don Lee states that the only response he received was from Mike Cooper, dated October 22, 2014, which stated that GSH Assn and GSH Homeowners Assn were the same entity.  This is identified as being Exhibit E (Dckt. 83) filed by Plaintiff.

I.  Don Lee testifies that he too attended the September 30, 2014 nonjudicial foreclosure sale of the 31 lots, with GSH Assn being identified as making the credit bids for all the lots, with there being no other bidders.  *Id.* ¶ 14.

J.  Don Lee testifies that there was no transfer of assets from GSH Assn to GSH Homeowners Assn and no agreement to merge the two entities.  *Id.* ¶¶ 15, 16, 17, 18.

K.  Don Lee testifies that GSH Assn never authorized CARS to foreclose on the 31 lots. *Id.* ¶ 19.

L.  Don Lee testifies that he prepared the document titled "Amendment to Declaration of Restrictions Gold Strike Heights Homeowners Association."  *Id.* ¶ 23.  He states that it was not his "intention" for GSH Homeowners Assn to be the successor to GSH Assn.  *Id.*

The Amendment to Declaration of Restrictions Gold Strike Heights Homeowners Association is filed by Plaintiff as Exhibit C (Dckt. 83, p. 6-8).  On the Exhibits' Cover Sheet filed by Plaintiff this Exhibit is stated to be:

3)  Exhibit  "C": "Amendment to the Declaration of Restrictions Gold Strike Heights Homeowners Association" dated July 23, 2008 **changing the name of the HOA from the Gold Strike Heights Association** [GSH Assn] **to the Gold Strike Heights Homeowners Association** [GSH Homeowners Assn].

8

Exhibits Cover Sheet, p. 2:12.5-16; Dckt. 83 (emphasis added). Plaintiff identifies this document as one in which there was a name change, with GSH Assn changing its name to GSH Homeowners Assn. This is in conflict with the testimony of Mr. Weiner and Mr. Lee which Plaintiff has provided in opposition to the Motion for Summary Judgment.

Going to Exhibit C, which is signed by Mark Weiner as the Treasurer of GSH Homeowners Assn, and which was prepared by Don Lee (who is not an attorney), it states in pertinent part:

A. "WHEREAS, the original developer of the Gold Strike Heights Subdivision, WESTWIND DEVELOPMENT, INC., formed the 'Association' prescribed under Section 6.1 of the recorded 'Declaration of Restrictions' recorded In the County of Calaveras on March 13, 2002 under instrument number 2002-4368, and. . . ." Exhibit C, p. 1.

B. "WHEREAS, it was subsequently **determined by the 'Board of Directors'** [of GSH Assn] that the best course of action was **to form a new corporation** that was established as a nonprofit mutual benefit corporation as required under applicable law, and. . . ." *Id.* (emphasis added).

C. "WHEREAS, **the new corporation formed** in May of 2007 identified as the **GOLD STRIKE HEIGHTS HOMEOWNERS ASSOCIATION** [GSH Homeowners Assn] **is the full successor In Interest to** the old corporation identified as the **GOLD STRIKE HEIGHTS HOMEOWNERS ASSOCIATION** [GSH Assn] formed in March of 2002 by WESTWIND DEVELOPMENT, INC., and. . . ." *Id.* (emphasis added).

D. "WHEREAS, full control of the 'Association' has now passed to the residents and membership of the Gold Strike Heights Subdivision and the **GOLD STRIKE HEIGHTS HOMEOWNERS ASSOCIATION** [GSH Homeowners Assn] **is** now **the full successor In Interest to WESTWIND DEVELOPMENT, INC. as the 'DECLARANT'** of the restrictions otherwise herein prescribed and recorded, and. . . ." *Id.* (emphasis added).

E. "WHEREAS, on June 28, 2008, the **membership of the GOLD STRIKE HEIGHTS HOMEOWNERS ASSOCIATION** [GSH Homeowners Assn] **voted** by the number of votes required to amend the restrictions under Article 12,Section 12.2 to change Section 1.3 of Article 1 **so that the name of the new corporation succeeds the name of the old corporation In the official governing documents**." *Id.*, p. 2 (emphasis added).

F. "WHEREAS, **full control of the 'Association'** prescribed under Section 6.1 of the recorded 'Declaration of Restrictions' recorded in the County of Calaveras on March 13, 2002 **has now been transferred** by WESTWIND DEVELOPMENT, INC. **to** the **GOLD STRIKE HEIGHTS HOMEOWNERS ASSOCIATION** [GSH Homeowners Assn], and. . . ." *Id.* (emphasis added).

G. "WHEREAS, the **GOLD STRIKE HEIGHTS HOMEOWNERS ASSOCIATION** [GSH Homeowners Assn] is now the 'DECLARANT' as defined under Section 1.7 of Article 1 of the recorded restrictions. . . ." *Id.*

H. "NOW, THEREFORE, said 'DECLARANT' hereby **certifies and declares** the following amendments to the heretofore recorded restrictions:

Article 1, Section 1.3, page 2, the following changes are to be made:

'**GOLD STRIKE HEIGHTS ASSOCIATION** [GSH Assn], a California nonprofit benefit corporation' **shall be changed to** read: '**GOLD STRIKE HEIGHTS HOMEOWNERS ASSOCIATION** [GSH Homeowners Assn], a California nonprofit benefit corporation." *Id.*   (emphasis added).

This document, which Don Lee and Mark Weiner testify was prepared by Don Lee and signed by Mark Weiner is in stark conflict with the 2016 testimony of Mark Weiner and Don Lee in their declarations that GSH Assn continued to remain as an entity with all of its assets and rights, with GSH Homeowners Assn being created only for very limited purposes, which would not include the nonjudicial foreclosures sales.

## CONSIDERATION OF SPECIFIC CLAIMS AND CAUSES OF ACTION

**Declaratory Relief**

Unaddressed in the Opposition is the contention that the First Cause of Action must fail because it is one seeking declaratory relief to assist the parties in their prospective conduct, when all acts have been completed and the dispute relates to the respective current (not future potential) rights and interests in the 31 lots post-foreclosure.  Declaratory relief is an equitable remedy distinctive in that it allows adjudication of rights and obligations on disputes regardless of whether claims for damages or injunction have arisen. *See* Declaratory Relief Act, 28 U.S.C. § 2201.[1]  "In

---

[1]  28 U.S.C. § 2201,

§ 2201.  Creation of remedy

(a) In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title 11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

(b) For limitations on actions brought with respect to drug patents see section 505 or 512 of the Federal Food, Drug, and Cosmetic Act, or section 351 of the Public Health Service Act.

effect, it brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981). The party seeking declaratory relief must show (1) an actual controversy and (2) a matter within federal court subject matter jurisdiction. *Calderon v. Ashmus*, 523 U.S. 740, 745 (1998). There is an implicit requirement that the actual controversy relate to a claim upon which relief can be granted. *Earnest v. Lowentritt*, 690 F.2d 1198, 1203 (5th Cir. 1988).

The court may only grant declaratory relief where there is an actual controversy within its jurisdiction. *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994). The controversy must be definite and concrete. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937). However, it is a controversy in which the litigation may not yet require the award of damages. *Id.*

Here, the bell has rung, with the parties fighting over the effect of the foreclosure sales—not merely whether the right to conduct such sales sometime in the future exists.

The court previously addressed this issue in ruling on the Defendant Chapter 7 Trustee's motion for summary judgment. Memorandum Opinion and Decision, p. 9:22–28, 10, and 11:1–5. Here, as there, the resolution of who owns the 31 lots is the subject of the quiet title claim, not the proper subject of a request for a declaration of rights so the parties can avoid taking action in violation of existing agreements and obligations.

The court grants Defendant CARS's motion that no relief is granted pursuant to the First Cause of Action.

**Requirement That Complaint to Quiet Title Must Be Verified**

Defendant CARS cites to California Code of Civil Procedure § 761.020, asserting that the Cause of Action to Quiet Title must fail because the Complaint is not a verified complaint. There is a corresponding requirement that the answer to a complaint asserting a quiet title claim for relief must be verified. Cal. C.C.P. § 761.030.

The Complaint was filed in state court on March 20, 2015. Complaint, Exhibit A; Dckt. 5. The Amended Answer of CARS was filed on September 8, 2015. Exhibit P, Dckt. 11. The Amended Answer is not verified. It consists of a general denial (which is permitted in state court) and eleven affirmative defenses. As with every general denial, the court cannot determine what

allegations in the complaint are really denied, and which CARS knows is true and will not actually contest.

The court has conducted a Status Conference, has set discovery schedules, and was prepared to conduct a trial setting conference in January 2017. As opposed to state court, for which trials may be set years out and repeatedly delayed due to no judge being available, or even the District Court due to its extreme case load, Congress has done litigants a great favor by giving them a judge whose sole judicial purpose is to conduct trials and contested matters so that bankruptcy cases and related proceedings are promptly adjudicated. Here, the parties to this Adversary Proceeding were on schedule to be in trial by March 2017.

To derail the determination of whether the estate owns the property or whether it sits with Plaintiff and to start all over when everyone appears to have waived anyone filing verified pleadings would be contrary to the Bankruptcy Code and the enactment of a uniform bankruptcy law pursuant to Article 1, Section 8, Clause 4 of the U.S. Constitution. The Chapter 7 Trustee must be able to reasonably act to assemble and liquidate property of the estate—which in this bankruptcy case is dependent on the judgment in this Adversary Proceeding.

The failure of CARS not to raise this issue until the eve of trial setting sounds in part like a waiver. Failing to state in an answer or demurrer (motion to strike in federal court) causes the possible defense to be waived.

> The waiver rule is not so literally applied as to preclude any possibility of an amendment to the answer to state a plea in abatement. But the courts take a strict attitude toward these amendments and require a strong showing of excuse for the failure to set up the plea at the earlier time.

WITKIN CAL. PROC., 5th Edition, Pleading § 1131 (citing *Tingley v. Times Mirror Co.* (1907) 151 C. 1, 13, 89 P. 1097; *Bernheim Distilling Co. v. Elmore* (1909) 12 C.A. 85, 86, 106 P. 720; *Reed & Co. v. Harshall* (1910) 12 C.A. 697, 703, 108 P. 719; *Stewart v. San Fernando Refining Co.* (1937) 22 C.A.2d 661, 663, 71 P.2d 1118).

The requirement that both the complaint and answer be verified under California procedure statutes appears to contemplate that a plaintiff diligently prosecuting such action will record a *lis pendens*. The requirement for a verified complaint is not "jurisdictional," but part of the pleading

1    requirement, which may be rectified by an amended, if necessary.

2           To the extent that CARS believes that obtaining a verification on the eve of trial setting is

3    necessary, the court grants leave for Plaintiff to do so.

4    **Immunity and Good Faith**

5           CARS asserts that it is guaranteed victory due to statutory grants of immunity, citing the

6    court to the following two statutes.  First, California Civil Code § 2924(b), which states:

7           (b) In performing acts required by this article, the trustee shall incur no liability for
            any good faith error resulting from **reliance on information provided in good faith**
8           by the beneficiary regarding the nature and the amount of the default under the
            secured obligation, deed of trust, or mortgage.  In performing the acts required by
9           this article, a trustee shall not be subject to Title 1.6c (commencing with Section
            1788) of Part 4.
10

11          Reading the plain meaning[2] of the language chosen by the Legislature in enacting Civil Code

12   § 2924(b), there is immunity from liability for:

13                 (1) a good faith error,

14                 (2) based on information provided in good faith,

15                 (3) regarding the nature and amount of the default.

16   The basic contention is that the trustee's deeds are void because CARS purported to conduct a

17   foreclosure sale for an entity that was not entitled to conduct the sales.  CARS asserts that it properly

18   conducted the sale and offers its evidence, while Plaintiff provides evidence that CARS had not

19   acted for a proper entity.  Further, Plaintiff presents evidence contending that CARS could not have

20   been acting in good faith, proffering testimony that CARS was provided with information of the

21

22          [2] For determining state law, a federal court is bound by the decisions of the highest court of that
     state.  In the absence of such a decision, a federal court must predict how the highest state court would
23   decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes
     and treatises. *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F. 3d 958, 960 (9th Cir. 2001).
24

25          Under settled canons of statutory construction, in construing a statute the California Supreme
     Court ascertains the usual and ordinary meaning of the words. *Kimmel v. Goland*, 51 Cal. 3d 202, 208
26   (Cal. 1990). The statute's plain meaning controls the court's interpretation unless the words are
     ambiguous. *Green v. State of California*, 42 Cal. 4th 254, 260 (Cal. 2007). When more than one statutory
27   construction is arguably possible, the California Supreme Court selects the construction that comports
     most closely with the apparent legislative intent, with a view to promote rather than defeat the statutes'
28   purpose. *Imperial Merchant Services, Inc. v. Hunt*, 47 Cal. 4th 381, 388 (Cal. 2009).

deficiencies concerning the person for whom it was purporting to conduct the nonjudicial foreclosure sales. Finally, the contention of improper conduct does not go to the nature and amount of the default, but to the person purporting to have the trustee's sales conducted could not so properly act. It is further asserted that the trustee's deeds inconsistent with the foreclosures conducted and the purported purchaser at the sale were executed and recorded by CARS.

Based on the evidence and counter evidence presented, the court cannot determine on summary judgment that the conduct of CARS relates to the nature and amount of the default, or that it was a "good faith error."

Next, CARS directs the court to California Civil Code § 2924(d) for the proposition that no claims can be asserted against CARS, which states:

> (d) All of the following shall constitute privileged communications pursuant to Section 47:
>
> (1) The mailing, publication, and delivery of notices as required by this section.
>
> (2) Performance of the procedures set forth in this article.
>
> (3) Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure.

While stating the Civil Code § 47 privilege for "procedures" and "performance of the procedures" set forth in this article, Civil Code § 2924(b) relied upon by CARS for claiming immunity and privilege requires that in performing such acts required by Article 1, it must have occurred due to a good faith error based on information provided by the beneficiary.

From the Complaint, and conflicting evidence presented, it appears that Plaintiff contends that CARS, with full knowledge of the asserted deficiency in its actions (GSH Assn's suspension of power), proceeded to improperly conduct foreclosure sales. Further, after the sales were completed, and with knowledge that the suspended corporation was the purchaser, CARS executed the trustee's deed naming another person, GSH Homeowners Assn, as the purported purchaser at the trustee's sales. While CARS offers the evidence of Ms. Jolly's testimony, Plaintiff offers testimony on Mr. Weiner and Mr. Lee that they told Ms. Jolly and CARS of the misidentification and the suspension of the party CARS was purporting to conduct the nonjudicial foreclosure sales,

14

but notwithstanding those disclosures Ms. Jolly and CARS proceeded with the sales – without any

investigation or inquiry by Ms. Jolly or CARS when provided the information.  Such testimony of

Mr. Weiner and Mr. Lee, if believed, might show malice or other lack of good faith conduct by

CARS.  Additionally, Exhibit E provided by Plaintiff and Exhibit 16 provided by CARS, is a letter

in which Mr. Cooper, president of GSH Homeowners Assn, states that it was CARS providing him

with advice as to who was the correct entity to conduct the sales.  Additionally, advice that GSH

Assn and GSH Homeowers Assn were the same entity for purposes of conducting the sales.  While

CARS may contend that the court should not believe Mr. Weiner and Mr. Lee because it is not

reasonable or credible, they have provided specific testimony of factual events.  For the court to

determine this issue, the court has to weigh, consider, and determine what testimony is credible. That

can only be done through a trial.

        The court will have to determine if  CARS had knowledge that the person purporting to

direct it to conduct the sale was not authorized to do so, why CARS proceeded with such sales.  It

may be the court concludes that it was a naive mistake.  It may be that the court concludes, after

assessing the testimony of all witnesses and making credibility determinations, that CARS willfully,

intentionally, and with malice acted to conduct improper sales.

**Requirement of Tender**

        CARS asserts that the challenges to the trustee's sales must fail because Plaintiff  failed to

tender the necessary cure amount, citing to *Lona v. Citibank*, 202 Cal. App.4th 89,104 (2011).

Plaintiff counters with a recent California Supreme Court decision in *Yvanova v. New Century*

*Mortgage Corporation*, 62 Cal. 4th 919 (2016).  In it, the Supreme Court makes a number of clear

statements concerning California law:

> A.    "A beneficiary or trustee under a deed of trust who conducts an illegal, fraudulent or willfully oppressive sale of property may be liable to the borrower for wrongful foreclosure. (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1062; *Munger v. Moore* (1970) 11 Cal. App. 3d 1, 7)." *Yvanva v. New Century Mortgage Corp.*, 62 Cal. 4th at 929.

> B.    "A foreclosure initiated by one with no authority to do so is wrongful for purposes of such an action. (*Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d at pp. 973–74; *Ohlendorf v. American Home Mortgage Servicing* (E.D. Cal. 2010) 279 F.R.D. 575, 582–83)." *Id.*

C.    In footnote 4, the Supreme Court discusses the tender requirement, stating, "Tender has been excused when, among other circumstances, the plaintiff alleges the foreclosure deed is facially void, as arguably is the case when the entity that initiated the sale lacked authority to do so. (*Ibid*.; *In re Cedano* (Bankr. 9th Cir. 2012) 470 B.R. 522, 529–30; *Lester v. J.P. Morgan Chase Bank* (N.D. Cal. 2013) 926 F. Supp. 2d 1081, 1093; *Barrionuevo v. Chase Bank, N.A.*,885 F. Supp. 2d 964, 969–970)." *Id.* The Supreme Court did not address the issue of tender under the specific circumstances in *Yvanva*.

D.    "A void contract is without legal effect. (Rest.2d Contracts, § 7, com. a, p. 20.) 'It binds no one and is a mere nullity.' (*Little v. CFS Service Corp.* (1987) 188 Cal. App. 3d 1354, 1362). 'Such a contract has no existence whatever.  It has no legal entity for any purpose and neither action nor inaction of a party to it can validate it . . .' (*Colby v. Title Ins. and Trust Co.* (1911) 160 Cal. 632, 644).  As we said of a fraudulent real property transfer in *First Nat. Bank of L. A. v. Maxwell* (1899) 123 Cal. 360, 371, 'A void thing is as no thing.'" *Id.*

E.    "A voidable transaction, in contrast, 'is one where one or more parties have the power, by a manifestation of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance.' (Rest.2d Contracts, § 7, p. 20).  It may be declared void but is not void in itself. (*Little v. CFS Service Corp.*, 188 Cal. App. 3d at p. 1358).  Despite its defects, a voidable transaction, unlike a void one, is subject to ratification by the parties. (Rest.2d Contracts, § 7; *Aronoff v. Albanese* (N.Y.App.Div. 1982) 85 A.D.2d 3)." *Id.* at 931.

F.    "[C]alifornia borrowers whose loans are secured by a deed of trust with a power of sale may suffer foreclosure without judicial process and thus 'would be deprived of a means to assert [their] legal protections' if not permitted to challenge the foreclosing entity's authority through an action for wrongful foreclosure. (*Culhane*, 708 F.3d at p. 290.)  A borrower therefore 'has standing to challenge the assignment of a mortgage on her home to the extent that such a challenge is necessary to contest a foreclosing entity's status *qua* mortgagee' (*id.* at p. 291)—that is, as the current holder of the beneficial interest under the deed of trust. . . ." *Id.*

G.    In rejecting that defendant's contention that there really was no prejudice to the property owner on the issue if the correct party conducted a foreclosure sale, since the owner was in default and would lose the property anyway,

> "The logic of defendants' no-prejudice argument implies that anyone, even a stranger to the debt, could declare a default and order a trustee's sale—and the borrower would be left with no recourse because, after all, he or she owed the debt to someone, though not to the foreclosing entity. This would be an 'odd result' indeed. (*Reinagel*, 735 F.3d at p. 225.)  As a district court observed in rejecting the no-prejudice argument, '[b]anks are neither private attorneys general nor bounty hunters, armed with a roving commission to seek out defaulting homeowners and take away their homes in satisfaction of some other bank's deed of trust.' (*Miller v. Homecomings Financial, LLC* (S.D.Tex. 2012) 881 F. Supp. 2d 825, 832.)" *Id.* at 938.

The contentions in the Complaint are that the deeds are void, not merely voidable.  Tender is not required under the facts and circumstances as presented to the court in connection with this

Motion for Summary Judgment. Additionally, on the eve of trial setting, it is questionable whether a demand for tender is of any significance. A motion based on such grounds could have been brought in good faith earlier in the case, not when the court is preparing to adjudicate the respective rights and allow the Chapter 7 Trustee to proceed with prosecuting this case. As shown by the conduct prior to the eve of trial, the issue of tender was of little substantive concern.

### MOTION GRANTED FOR SPECIFIC CAUSES OF ACTION

The court grants the Motion for Summary Judgment for CARS and against Plaintiff on the following Causes of Action:

A.    First Cause of Action for Declaratory Relief, with no relief granted Plaintiff pursuant thereto.

The court denies, without prejudice to determination of the rights, issues, and defenses at trial, the following Causes of Action:

B.    Second Cause of Action to Determine that the 31 trustee's deeds issued by CARS are void. CARS may elect to not defend its trustee's deed, leaving that to the other Defendants, in light of CARS not claiming any interest in the 31 properties thereto.[3]

C.    Third Cause of Action to "cancel" the 31 trustee's deeds issued by CARS. CARS may elect not to actively defend its trustee's deeds, leaving that to the other Defendants, in light of CARS not claiming any interest in the 31 properties thereto.

D.    Fourth Cause of Action for wrongful foreclosure.

E.    Fifth Cause of Action to Quiet Title. CARS may elect not to actively defend its trustee's deeds, leaving that to the other Defendants, in light of CARS not claiming any interest in the 31 properties thereto.

F.    Sixth Cause of Action for Slander of Title.

### UNDISPUTED FACTS FOR TRIAL

In reviewing the extensive pleadings by CARS and Plaintiff, the court has constructed the

---

[3] For the Second, Third, and Fifth Causes of Action, in light of the Fourth Cause of Action, one of the factors considered by the court is that CARS may well want to ensure that it has "standing" to actively litigate the issues in connection with those causes of action in light of the failure of those may well be determinative of the Fourth and Sixth Causes of Action.

following chart of Undisputed Facts in this Adversary Proceeding:

1.  Indian Village Estates, LLC. ("Plaintiff") filed an unverified Complaint entitled *Indian Village Estates, LLC. v. Gold Strike Heights Association, et al.* against Defendant Community Assessment Recovery Services on March 20, 2015.

2.  Plaintiff admits that the purported wrongful actions and communications of Community Assessment Recovery Services ("CARS") occurred in the context of its services as a non-judicial foreclosure trustee.

3.  CARS filed its amended answer on September 8, 2015, and asserted the affirmative defenses of privilege and immunity.

4.  Plaintiff has alleged that CARS, "[a]cting as either trustee or the agent of the beneficiary of alleged delinquent assessments, wrongfully and without privilege, caused a Notice of Default to be recorded against the subject property."

5.  In March 2011, litigation involving Plaintiff, Gold Strike Heights Homeowners Association ("GSH Homeowners Assn"), Mark Weiner, and Don Lee was settled.

6.  Pursuant to a 2011 Settlement Agreement Plaintiff agreed to pay reduced association dues and assessments to GSH Homeowners Assn.

7.  The 2011 Settlement Agreement created a binding contract between Plaintiff and GSH Homeowners Assn.

8.  Pursuant to the 2011 Settlement Agreement, Plaintiff in fact paid reduced association dues and assessments to GSH Homeowners Assn for a period of time.

9.  In 2012, Plaintiff unilaterally stopped paying association dues and assessments for reasons unrelated to the 2011 Settlement Agreement.

10.  The 2011 Settlement Agreement had not been modified or terminated, no breach had occurred by GSH Homeowners Assn and performance by Plaintiff  had not been excused.

11.  Don Lee told Mark Weiner that the Board of GSH Homeowners Assn was the stupidest group of people he had ever known, and he advised Plaintiff to cease making assessment payments.

12.  GSH Homeowners Assn contracted with CARS on or about July 24, 2012, to notice and to conduct nonjudicial foreclosure services for properties owned by Plaintiff.

13.  CARS was hired by GSH Homeowners Assn to act solely as its nonjudicial foreclosure trustee.

14.  Rebecca Jolly, an employee of CARS, acted on behalf of CARS, the foreclosure trustee.

15.  On or about September 5, 2012, CARS served Notices of Delinquent Assessment as to the 31 lots owned by Plaintiff.

16.  On or about October 7, 2013, GSH Homeowners Assn Board of Directors authorized CARS to begin the foreclosure process on the 31 lots owned by Plaintiff.

17.  On March 17, 2013, Plaintiff sent a letter to CARS requesting an explanation why GSH Homeowners Assn had a right to collect assessments and foreclose on the 31 lots.

18. From March 8, 2013, to January 12, 2015, CARS prepared and filed documents and notices with the Calaveras County Recorder and copies were sent and received by Plaintiff.

19. Plaintiff never disputed the accuracy of the assessment amounts stated in any of the notices.

20. Mark Weiner had no prior relationship with Rebecca Jolly or CARS prior to CARS' initiation of the foreclosure process.

21. Before the foreclosure of the 31 lots, CARS, through Rebecca Jolly, had no prior dealings or any relationship with Plaintiff.

22. Prior to filing the instant lawsuit, Plaintiff failed to tender to GSH Homeowners Assn the amount of the outstanding assessments on all of the 31 lots.

### CONCLUSION

The court grants the Motion for Summary Judgment for the First Cause of Action (Declaratory Relief), with no relief awarded Plaintiff thereunder. Further, the court makes the determinations set forth above as undisputed in this Adversary Proceeding pursuant to Federal Rule of Civil Procedure 56(g) and Federal Rule of Bankruptcy Procedure 7056.

Dated: April 20, 2017

By the Court

Ronald H. Sargis, Judge
United States Bankruptcy Court

19

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| Debtor(s) | Attorney for the Debtor(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| Clifford W. Stevens<br>P.O. Box 20<br>Stockton, CA 95201-3020 | Indian Village Estates, LLC<br>c/o James L. Brunello<br>P.O. Box 4155<br>El Dorado Hills, CA 95762 |
| Community Assessment Recovery Services<br>c/o Amanda N. Griffith<br>740 University Avenue, Ste. 100<br>Sacramento, CA 95825 | Gold Strike Heights Homeowners Assn<br>c/o Thomas G. Trost<br>3200 Douglas Blvd., Ste. 300<br>Roseville, CA 95661 |

20